**Jerrell D. WHITE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 15A01–1008–CR–463.

Court of Appeals of Indiana.

March 9, 2011.

Rehearing Denied May 18, 2011.

Jeffrey E. Stratman, Aurora, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

The defendant herein was convicted of theft for stealing a cash register and cash from a restaurant. He was also convicted of receiving stolen property for divvying up that cash with his accomplice. We find that the two convictions violate the prohibition against double jeopardy. Additionally, we find that the State failed to prove beyond a reasonable doubt that the defendant was a habitual offender because one of his alleged prior felonies was committed when he was fifteen years old and the State offered no evidence to show he was charged and convicted as an adult. Consequently, we reverse in part and remand with instructions.

Appellant-defendant Jerrell D. White appeals his convictions for Theft,[1] a class D felony, and Receiving Stolen Property,[2] a class D felony, and the finding that he is a Habitual Offender.[3] White raises the following arguments: (1) his convictions violate double jeopardy; (2) there is insufficient evidence supporting the theft conviction; (3) there is insufficient evidence supporting the habitual offender finding; and (4) the sentence imposed by the trial court is inappropriate in light of the nature of the offense(s) and his character.

We find that White's convictions violate double jeopardy and that there is insufficient evidence supporting the habitual offender finding. We also find, however, that the evidence supporting the theft conviction is sufficient and that the remaining three-year sentence thereon is not inappropriate. We affirm in part, reverse in part, and remand with instructions to vacate the receiving stolen property conviction, the habitual offender finding, and the sentences previously imposed for those two counts.

### FACTS

On September 13, 2009, Michael Hills rented a car to drive from Columbus, Ohio, to the Hollywood Casino in Lawrenceburg. Hills and White were friends, and White drove the car that day. The two men went to the casino, whereupon Hills lost his money gambling.

Hills and White then left the casino, and White drove them to a Golden Corral restaurant. White parked the car out of view, hiding behind a construction trailer, while Hills entered the restaurant. Hills entered and exited the restaurant a number of times, and the last time he entered the restaurant, he walked to the cash register, pulled it out, and dragged the register and the wires attached to it out the door. It was later revealed that the cash register contained $968.

1. Ind.Code § 35–43–4–2(a).

2. I.C. § 35–43–4–2(b).

3. Ind.Code § 35–50–2–8(g).

Hills told White to open the trunk, which White did, and Hills threw the cash register into the trunk. Hills told White that he had taken the register from the restaurant, and White laughed. Then the two men sped away from the restaurant, with White in the driver's seat. A witness observed the incident and provided police with the rental car's license plate number.

Hills and White returned to the casino. Hills dropped the cash register in the lot behind the car to remove the money; the two men then divided the cash. Hills then dropped the register over the wall in the parking garage. They entered the casino and began gambling.

Lawrenceburg Police Officers Brian Potts and Andrew Seaver were dispatched to the Golden Corral. The officers received descriptions of Hills, White, the car, and the license plate. Officer Potts suspected that the two men might have taken the money to gamble at the casino, so the two officers went to the casino to investigate that possibility.

When Officers Potts and Seaver arrived at the casino, they learned from a security guard that two men matching the descriptions of the eyewitnesses had been seen entering the casino. Officer Potts then saw White and Hills. Officer Potts asked Hills about the car, and Hills directed the police to the rental car in the parking garage. The car was surrounded by plastic debris from the broken cash register and loose change, and three or four stories below, police discovered the broken cash register with Golden Corral receipts.

The police impounded the car and arrested Hills on that same day, September 13, 2009. Lead Detective Jeremy Shepherd did not believe that the police had probable cause at that time to arrest White, so he was permitted to leave. Two days later, having spoken with witnesses, observed and analyzed the impounded vehicle, reviewed the surveillance tapes of White and Hills together at the casino, and taken Hills's statement, police arrested White and charged him with class C felony robbery, class D felony theft, and class D felony receiving stolen property. On March 30, 2010, the State added a count alleging White to be a habitual offender.

White represented himself, with "standby" assistance from a public defender, at his jury trial, which began on April 19, 2010. After three days of trial, the jury found White not guilty of robbery and guilty of theft and receiving stolen property. Following the habitual offender phase of trial, the jury adjudged White to be a habitual offender. At the May 20, 2010, sentencing hearing, the trial court sentenced White to three years imprisonment each for theft and receiving stolen property, to be served concurrently, and enhanced the sentence by four and one-half years for White's status as a habitual offender. White now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

White first argues that his convictions for theft and receiving stolen property violate the prohibition against double jeopardy. It is well established that two or more offenses are the "same offense" in violation of Article I, section 14 of the Indiana Constitution if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999) (emphasis original). Turning to the statutory elements of the challenged crimes, we are to

compar[e] the essential statutory elements of one charged offense with the

essential statutory elements of the other charged offense.... [T]his review considers the essential statutory elements to determine the identity of the offenses charged, but does not evaluate the *manner* or *means* by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element.

*Id.* at 50 (emphasis original).

The crime of class D felony theft is defined as follows:

A person who knowingly or intentionally exerts unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use, commits Theft, a Class D Felony.

I.C. § 35–43–4–2(a). The crime of class D felony receiving stolen property is defined as follows:

A person who knowingly or intentionally receives, retains or disposes of the property of another person *that has been the subject of theft* commits Receiving Stolen Property, a Class D Felony.

I.C. § 35–43–4–2(b) (emphasis added). To prove that a person committed the crime of receiving stolen property, therefore, the State is also required to prove that the stolen object received was the subject of a theft.

■ Where, as here, the person who committed the theft [4] was also convicted of receiving that same stolen property, then the elements of theft are inherently included in receiving stolen property. In other words, an individual cannot be convicted of

stealing property *and* of receiving that property when the spoils of victory are divvied up. White's dual convictions for theft and receiving stolen property violate the prohibition against double jeopardy in the Indiana Constitution, and we direct the trial court to vacate the receiving stolen property conviction and the sentence thereon.[5]

## II. Sufficiency of the Evidence

Next, White argues that the evidence supporting his theft conviction and the habitual offender finding is insufficient. In reviewing claims of insufficient evidence, we neither reweigh the evidence nor assess witness credibility, and will affirm unless no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Clark v. State,* 728 N.E.2d 880, 887 (Ind.Ct.App.2000). As with a criminal conviction, the State is required to prove a habitual offender allegation beyond a reasonable doubt. *Boggs v. State,* 928 N.E.2d 855, 867–68 (Ind.Ct.App.2010), *trans. denied.*

### A. Theft

■ As noted above, to convict White of theft as Hills's accomplice, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally aided, induced, or caused Hills to knowingly or intentionally exert unauthorized control over Golden Corral's cash register and cash, with intent to deprive Golden Corral of any part of its value or use. I.C. § 35–41–2–4; I.C. § 35–43–4–2(a).

4. White was convicted of theft as an accomplice. *See Porter v. State,* 743 N.E.2d 1260, 1266 (Ind.Ct.App.2001) (providing that a person, acting in concert with another whose direct acts constitute the elements of the crime, is an accomplice and is equally liable for all acts done by his associates; and that the State need not prove that the accomplice

personally participated in each elements of the offense to establish guilt).

5. White argues that *both* convictions should be vacated because there is insufficient evidence supporting the theft conviction. Inasmuch as we find below that the evidence is sufficient, we decline to do so.

The record herein reveals that White and Hills traveled to the casino together from Ohio. After Hills gambled away his money, the two men drove to Golden Corral. White, who was driving, parked the car in a hidden spot behind a construction trailer while Hills went inside. Eventually, Hills exited the restaurant with a cash register in his hands. He directed White to open the trunk and put the cash register inside. Hills told White that he had taken the cash register from the restaurant; White laughed and then drove the car away from the scene.

Much of this evidence is derived from Hills's statement to the police and testimony at White's trial. White emphasizes that Hills consistently stated that White did not know of Hills's plan to steal from Golden Corral when they drove to the restaurant. Even if we assume solely for argument's sake that White did not know ahead of time, the evidence establishes that at the least, White knew, as soon as Hills entered the car after stealing the cash register, that a theft had been committed. Hills placed the cash register in the trunk and then told White what had happened. White laughed and drove away.

Given this evidence, at the very least, it was reasonable for the jury to infer that White became an accomplice to the theft by knowingly and intentionally driving the cash register, cash, and Hills away from the scene. White's attempts to discredit the testimony of Hills and other witnesses is merely a request that we assess witness credibility and reweigh the evidence, which we may not do. We find the evidence sufficient to support White's theft conviction.

## B. Habitual Offender Finding

■ White also argues that there is insufficient evidence supporting the habitual offender finding. To establish that White is a habitual offender, the State was required to prove beyond a reasonable doubt that he had accumulated two prior unrelated felony convictions. I.C. § 35–50–2–8(g).

Here, the charging information alleged that White had amassed the following convictions in Nebraska: (1) burglary and arson on August 18, 1998; and (2) theft by unlawful taking on October 10, 1999. It is undisputed that White was born on October 11, 1981. The burglary and arson were alleged to have been committed on March 11, 1997, meaning that at the time he committed those offenses, White was only fifteen years old.

■ Although the documents from Nebraska appear to show that White was tried and convicted in adult court, there was no evidence introduced to establish those facts. We do not know how Nebraska delineates between adult convictions and juvenile adjudications in its judicial documents, and the State neglected to introduce evidence to that effect. It may, in fact, be the case that White was tried and convicted as an adult for an act he committed at the age of fifteen, but it was the State's burden to prove that beyond a reasonable doubt, and it failed to do so. Consequently, we find that the evidence is insufficient to support the habitual offender finding and direct the trial court to vacate the finding and the sentence enhancement thereon.[67]

6. The State directs our attention to other prior felonies that White is alleged to have committed. But the State did not include those felonies in the information, nor did it introduce them into evidence at trial. Consequently, it may not now rely on those felonies to support the habitual offender finding retroactively. Similarly, the State directs our attention to statements made by White during the sentencing hearing regarding the burglary and arson offenses, but that evidence was not presented to the jury during the habitual of-

### III. Sentence

Finally, White argues that the sentence imposed by the trial court was inappropriate in light of the nature of the offense and his character pursuant to Appellate Rule 7(B). In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind.Ct.App.2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

■ Inasmuch as we have vacated White's conviction for receiving stolen property and the finding that he is a habitual offender, the only remaining sentence is three years imprisonment for class D felony theft. A person convicted of a class D felony faces a possible sentence of six months to three years, with an advisory term of one and one-half years imprisonment. Ind.Code § 35–50–2–7. Thus, White received a maximum three-year term.

As for the nature of the offense, after White and Hills ran out of gambling money, they drove to a Golden Corral. White parked the car in a hidden location while Hills stole a cash register from a restaurant. White opened the trunk, Hills placed the cash register inside, and the men then drove away as White laughed about the situation. White and Hills then returned to the casino, broke the cash register, divvied up the cash that was inside, and resumed gambling. The men stole $968, caused $1,314.13 worth of damage, and placed the cashier in fear. She is now working fewer hours as a result of the incident and her children do not want her to work at the restaurant anymore.

As for White's character, the presentence investigation report reveals that in addition to the burglary and arson convictions/adjudications, he was adjudicated delinquent for acts that would have been receiving a stolen item and obstructing administration of the law had he been an adult. Additionally, he has amassed convictions for obstructing administration of the law, trespass, two counts of theft, and felon in possession of a firearm. Furthermore, there were charges of forgery and possession of criminal tools pending in Ohio at the time White was convicted herein. We do not find the three-year theft sentence to be inappropriate in light of the nature of the offenses and White's character.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate the theft conviction, the habitual offender finding, and the sentences imposed thereon.

VAIDIK, J., and BARNES, J., concur.

---

fender phase of the trial, and may not be used to support the finding retroactively.

7.   White also argues that the State was erroneously permitted to add the habitual offender allegation after the omnibus date, but given our finding that the evidence was insufficient to support the finding, we will not address this argument.