## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 23 2018, 10:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Houdek
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Austin D. Johnson, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff* | August 23, 2018 Court of Appeals Case No. 18A-CR-155 Appeal from the Marion Superior Court The Honorable Kurt Eisgruber, Judge The Honorable Steven J. Rubick, Magistrate Trial Court Cause No. 49G01-1708-F5-28201 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Austin Johnson was convicted of receiving stolen auto parts as a Level 5 felony and auto theft as a Level 6 felony. The trial court sentenced Johnson to concurrent terms of 6 years and 910 days respectively. On appeal, Johnson argues that his convictions violate double jeopardy principles and that his sentence is inappropriate.

[2] We affirm in part, reverse in part, and remand.

## Facts & Procedural History

[3] On July 30, 2017, Stephanie Kellogg was living with her uncle, John Johns, on Routiers Avenue in Indianapolis. Unbeknownst to her uncle, Kellogg invited Johnson, whom she had known for a short time through social media and only by his first name, over to the house. After Johnson arrived, he and Kellogg talked on the porch for about twenty minutes before going inside. When Kellogg went to get Johnson a glass of water, Johnson grabbed her uncle's keys off of a table in the front room, exited the house, and drove away in her uncle's blue 2008 PT Cruiser. Kellogg saw Johnson pull out and drive away from the house. She immediately called 911 and then woke her uncle to tell him that his car had been stolen. Neither Kellogg nor Johns gave Johnson permission to take the car.

[4] Police officers responded to the report of the stolen vehicle. Kellogg shared with them a picture of Johnson from a social media page from which it was determined that Johnson was the suspect. About twelve hours later, after enlisting the help of friends through social media and text messages, Johns

received information that led him to his car about eight to ten miles away from his house. He and a group of friends and family members blocked the car in with another vehicle and apprehended Johnson, holding him down until police arrived. The keys were recovered from Johnson's pocket.[1] After he was arrested, Johnson admitted to police that he took the car.

[5] The State charged Johnson with Count I, receiving stolen auto parts elevated to a Level 5 felony based on a prior conviction, and Count II, auto theft as a Level 6 felony. A bench trial was held on December 6, 2017, at the conclusion of which the trial court found Johnson guilty of both offenses. On January 5, 2018, the trial court sentenced Johnson to concurrent terms of 6 years on Count I and 910 days on Count II. Johnson now appeals. Additional facts will be provided as necessary.

### Discussion & Decision

[6] Johnson argues, and the State concedes, that Johnson's convictions for receiving stolen auto parts and auto theft violate double jeopardy principles. We agree. In Count I, the State charged that "[o]n or about July 30 2017, [Johnson] did knowingly receive, retain or dispose of a motor vehicle of John Johns, to-wit, a 2008 PT Cruiser, such property having been the subject of a theft." *Appellant's Appendix* at 16. In Count II, the State charged that [o]n or

---

[1] Once the car was returned, Johns discovered that there were multiple items missing, including his ankle braces, his cane, his sunglasses, the spare tire, the car jack, and a car seat, among other items.

about July 30, 2017, [Johnson] did knowingly exert unauthorized control over the motor vehicle of John Johns, to-wit, a 2008 PT Cruiser, with intent to deprive the person of the vehicle's value or use." *Id*. Here, the same car is the subject of the theft and receiving stolen property convictions and thus, the theft is inherently included in receiving stolen property. *See White v. State*, 944 N.E.2d 532, 536 (holding that "[w]here . . . the person who committed the theft was also convicted of receiving that same stolen property, then the elements of theft are inherently included in receiving stolen property"), *trans. granted, summarily aff'd on this issue* 963 N.E.2d 511, 514 (Ind. 2012). We therefore reverse Johnson's conviction on Count II and remand to the trial court with instructions to vacate this conviction.

[7] Johnson also argues that his maximum six-year sentence on Count I is inappropriate. *See* Ind. Code § 35-50-2-6 ("[a] person who commits a Level 5 felony . . . shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years"). Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R.

7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[8] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[9] The nature of the offense is relatively innocuous in that it involved the straightforward taking of a car without permission. There was minimal risk and no one was injured because Johnson seized on a moment of inattention to accomplish the taking. The owner recovered the car twelve hours later and,

although some personal items were missing, the car was in the same general condition as it was when it was taken.

[10] The character of the offender, however, supports the six-year sentence imposed. Johnson argues that because his age—twenty-three at the time of sentencing—put him "well within developmental norms to exhibit immaturity or poor impulse control," this court should discount the severity and frequency of his delinquent and criminal behavior. *Appellant's Brief* at 11. We view his criminal and juvenile history in a different light, i.e., as demonstrating a clear disregard for the law.

[11] As noted by the trial court, Johnson has a history of delinquent and criminal behavior, having accumulated seven true findings as a juvenile and seven convictions as an adult, many of which are for property crimes. As a juvenile, Johnson was adjudicated delinquent for battery resulting in bodily injury to an endangered adult, two counts of theft, burglary, battery resulting in bodily injury, burglary of a dwelling, and escape. All but one would have resulted in felony convictions if committed by an adult. Over the course of the juvenile adjudications, Johnson violated the terms of formal probation and home confinement multiple times.

[12] Approximately two months after his eighteenth birthday, Johnson committed theft and was charged with two counts related to the same. Two days later, he was charged with unauthorized entry of a motor vehicle. Johnson was ultimately convicted of all of these offenses and placed on probation. Petitions

to revoke probation were filed and granted in both cases. Johnson then committed resisting law enforcement and later, theft as a Class D felony. Before the theft case was concluded, Johnson was charged with Class D felony intimidation. In both the theft and intimidation cases, Johnson was placed on probation, and in both cases, he committed multiple probation violations. In September 2016, Johnson committed auto theft, and in October 2016, he committed battery resulting in bodily injury as a Level 5 felony. He was convicted of both offenses and placed on electronic monitoring. Johnson, however, tampered with this monitoring device and was ultimately revoked from electronic monitoring due to his conviction in this case.

[13] Johnson's history of delinquent and criminal behavior does not reflect upon his character in a positive light. Johnson has been afforded leniency on numerous occasions, but with no effect on his criminal behavior. We agree with the trial court that "his criminal history establishes . . . that he can best be served with the rehabilitation provided by a penal facility" because he "is likely to reoffend if he does not receive that rehabilitation." *Transcript* at 65-66. In light of the nature of the offense and character of the offender, we cannot say that Johnson's six-year sentence is inappropriate.

[14] Judgment affirmed in part, reversed in part, and remanded.

[15] Brown, J. and Tavitas, J., concur.