ATTORNEYS FOR APPELLANT
Matthew D. Anglemeyer
Ruth Ann Johnson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



No. 49S00-1207-LW-000376

MICHAEL INMAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G02-1004-MR-029733
The Honorable Robert Altice, Judge

On Direct Appeal from a Sentence of Life Imprisonment Without Parole

**February 11, 2014**

**David, Justice.**

Michael Inman was convicted of murder, murder while committing or attempting to commit the offense of robbery ("felony murder"), robbery, and unlawful possession of a firearm by a serious violent felon ("SVF") and sentenced to life imprisonment without the possibility of

parole ("LWOP"). On direct appeal, he claims that Indiana Code Section 35-50-2-9(l) (2008) is unconstitutional because it does not require that the weighing of aggravators and mitigators be done beyond a reasonable doubt, and he raises issues related to the admission of evidence, the use of an exhibit, an instruction on felony murder, the provision of a definition, the denial of surrebuttal, and the sentence. We affirm Inman's conviction and sentence.

**Facts and Procedural History**

On April 9, 2010, Inman went to the Fountain Square jewelry store of Dave Pedigo. When Inman arrived at the store, Pedigo showed him a $2000 ring from a case near the front of the store. A customer placed Inman at the store at 4:45 p.m. Besides this customer and Inman, there were no other customers in the store at that time. Shortly before 5:00 p.m., a friend of Pedigo's entered the store and found Pedigo dead near a safe in the store's back room.

Pedigo had been shot in the head above his left ear from less than a foot away. The bullet was later determined to have been fired from Pedigo's own Rossi .38 revolver. Additionally, there was evidence of blows to Pedigo's chest and the back of his head. Investigators observed no signs of a struggle in the back room, although in the front of the store a counter was disturbed and a vase had been knocked to the floor.

Later the same day, Inman gave his girlfriend Katie Sowders a ring taken from Pedigo's store. He explained his broken nose to her as the result of getting hit playing basketball.

The following day, police arrived at Inman's apartment. Not yet a suspect in Pedigo's killing, Inman was a suspect in an investigation into an April 3, 2010, robbery of a Circilla lingerie store. Inman instructed Sowders not to open the door. When the police walked away, Inman and Sowders exited the apartment. A neighbor observed Inman toss a gun into a bush.

2

Still nearby, police apprehended Inman, located the gun, and discovered nine rings from Pedigo's store in his pocket. The gun was determined to be Pedigo's Rossi revolver.

When asked by the lead homicide detective assigned to Pedigo's case about his whereabouts the day of the murder, Inman failed to mention his presence at Pedigo's store. Further, he claimed that he bought the nine rings and the gun for twenty-five dollars on April 9, 2010, from "a guy named Wayne Head." Efforts to locate Head were unsuccessful.

The State charged Inman with murder,[1] felony murder,[2] robbery,[3] and unlawful possession of a firearm by an SVF[4]; filed an information alleging Inman to be a habitual offender; and filed a request for life sentence without parole. In its request, the State alleged as aggravating circumstances that Inman (1) intentionally killed Pedigo while committing or attempting to commit robbery; and (2) killed Pedigo while on parole.

On May 17, 2012, a jury found Inman guilty of murder, felony murder, and robbery. Inman waived jury trial on the remaining charges, and the trial court found Inman guilty of unlawful possession of a firearm by an SVF and to be a habitual offender. Additionally, the trial court found that pursuant to Ind. Code § 35-50-2-9(l), the State had proven the charged aggravating circumstances beyond a reasonable doubt, and that the aggravating circumstances outweighed the mitigating circumstances. The trial court sentenced Inman to LWOP for murder.

On June 13, 2012, the trial court conducted a sentencing hearing on the remaining counts. Finding that Inman's conviction for felony murder merged with his murder conviction, the trial court vacated Inman's conviction for the former. The trial court then sentenced Inman to four years for robbery as a class C felony and to ten years for unlawful possession of a firearm by an

---

[1] Ind. Code § 35-42-1-1(1) (2008).
[2] Ind. Code § 35-42-1-1(2).
[3] Ind. Code § 35-42-5-1 (2008).
[4] Ind. Code § 35-47-4-5 (2008).

SVF as a class B felony, ordered both sentences to run concurrently with Inman's LWOP sentence, and enhanced Inman's LWOP sentence by thirty years after determining him to be a habitual offender.

**Issues Raised**

Pursuant to Ind. Appellate Rule 4(A)(1)(a), Inman appeals directly to this Court. First, he argues that Ind. Code § 35-50-2-9(l) is unconstitutional because it does not require that the weighing of aggravating circumstances and mitigating circumstances be done beyond a reasonable doubt. Second, he claims the trial court erred under Ind. Evidence Rule 404(b) by admitting evidence that Inman was a suspect in another case. Third, he asserts that the trial court also erred under Ind. Evidence Rule 404(b) by allowing the jury to hear Inman refer to a "criminal spree." Fourth, he contends that he was improperly denied a change of judge and a grant of a mistrial after he so moved following the State's provision of an ordered list of exhibits and sponsoring witnesses to the trial court and not the defense.

Fifth, he posits that the trial court erred by giving a jury instruction about the robbery and murder being a "continuous transaction." Sixth, he maintains that the trial court erred in providing the jury with a definition of the word "asportation." Seventh, he insists that the trial court erred in denying him surrebuttal in closing argument to address the State's contention that Pedigo was on his knees when he was shot. Eighth, he reasons that he is entitled to a new trial on account of cumulative error. Ninth and finally, he propounds that his LWOP sentence should be reduced to a term of years pursuant to Ind. Appellate Rule 7(B). We will take each in turn.

**Standard of Review**

"A sentence of life without parole is subject to the same statutory standards and requirements as the death penalty." Krempetz v. State, 872 N.E.2d 605, 613 (Ind. 2007).

4

Following a finding of guilty by the jury, before life imprisonment without parole for murder can be imposed, the State is required to prove beyond a reasonable doubt at least one aggravating circumstance listed in subsection (b) of the LWOP statute.  Ind. Code § 35-50-2-9(a); Krempetz, 872 N.E.2d at 613.  In making its sentencing determination, the trial court must find not only that the State has proven the existence of an alleged aggravator beyond a reasonable doubt, but also that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.  Ind. Code § 35-50-2-9(l); Krempetz, 872 N.E.2d at 613.

We have mandatory and exclusive jurisdiction over a criminal appeal where the sentence is life without parole.  App. R. 4(A)(1)(a); Cain v. State, 955 N.E.2d 714, 718 (Ind. 2011).  However, our standard rules of appellate review apply just as they do in death penalty cases.  Cain, 955 N.E.2d at 718.

## I.    Indiana Code Section 35-50-2-9(l)

Ind. Code § 35-50-2-9(l) provides:

> Before a sentence may be imposed under this section, the jury, in a proceeding under subsection (e), or the court, in a proceeding under subsection (g), must find that:
>
> (1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and
>
> (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.

Inman contends that Ind. Code § 35-50-2-9(l) is unconstitutional because it does not require that the weighing of aggravating circumstances and mitigating circumstances be done beyond a reasonable doubt.

5

However, this Court has held otherwise.  As we discussed in Ritchie v. State,

> [t]he Supreme Court has now made clear that statutory aggravators in Indiana's Death Penalty law are the functional equivalent of elements of a crime, and must be found by a jury beyond a reasonable doubt.  Ring v. Arizona, 536 U.S. 584, 609 (2002).  Ring applied to death penalty jurisprudence the doctrine first developed in Apprendi v. New Jersey, 530 U.S. 466, 494, that the Sixth Amendment right to jury trial requires that the jury make any finding that "exposes the defendant to a greater punishment."  We believe the pivotal inquiry under Ring and Apprendi is whether exposure to punishment is increased, *not whether the punishment should or should not be imposed in a given case*.  As Ring explained: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."  Ring, 536 U.S. at 602.

809 N.E.2d 258, 265 (Ind. 2004) (emphasis added), cert. denied.

Despite the Sixth Amendment analysis present in our above-quoted precedent, Inman claims that we reached the wrong result in Ritchie because we used "terminology exclusively within the purview of the Eighth Amendment."  (Inman's Br. at 13.)  According to Inman, this Court's use of the term "selection decision" and "conclusion that the weighing process is a 'selection decision'" are improper.  (Inman's Br. at 13, 30.)

However, an examination of the Ritchie text reveals that term appears only once in the decision—within a quote from the Nebraska Supreme Court contrasting the Sixth Amendment right to jury determination of facts exposing a defendant to the death penalty with the "selection decision" that follows the balancing of aggravating and mitigating circumstances.  Ritchie, 809 N.E.2d at 267.  Furthermore, to the extent that the weighing of aggravating and mitigating factors determines whether a life sentence will be imposed, there is no conflating of Sixth and Eighth Amendment principles in Ritchie.  Inman himself concedes that "there will certainly be

6

overlap in terminology between the Eighth Amendment analysis and the Sixth Amendment analysis." (Inman's Br. at 29.) His contention lacks merit.

After Inman waived his right to have a jury make the § 35-50-2-9(l) findings, the trial court found that the State proved beyond a reasonable doubt that Inman intentionally killed Pedigo while committing or attempting to commit robbery and killed Pedigo while on parole. The trial court then found that these aggravating circumstances outweighed any mitigating circumstances.[5] Because we concluded in Ritchie that "neither federal constitutional doctrine under Apprendi and Ring nor Indiana state jurisprudence leads to the requirement that weighing be done under a reasonable doubt standard," the trial court was not required to weigh the aggravating circumstances and mitigating circumstances beyond a reasonable doubt. 809 N.E.2d at 266. Thus, the trial court fully complied with Ind. Code § 35-50-2-9(l), which we once again uphold as constitutional.

## II.    "Suspect in Another Crime"

The second issue Inman raises relates to the testimony of a detective. At a pretrial hearing, the State—wanting at trial to inquire of a detective why the police arrived at Inman's apartment before he was considered a suspect in Pedigo's murder—argued that the prosecutor should be able to ask the detective if Inman was "wanted for a crime." (Tr. at 1351.) Inman objected and insisted that the jury hear only that he was "a person of interest." (Tr. at 1353.)

---

[5] Inman's offered mitigating circumstances: (1) the nature and circumstances of this crime make LWOP disproportionate to other punishments imposed in other cases; (2) residual doubt that the killing was a result of self-defense; (3) he had an alcoholic mother; (4) he had a physically and emotionally absent father; (5) his grandmother, who adopted him, died in 1997; (6) he earned a GED; (7) he obtained, between Ball State University and Martin University, a four-year college education; (8) he maintained an ongoing, non-violent relationship with Katie Sowders; and (9) he took responsibility for the shooting. The trial court did not find (1), (2), (8), or (9) to be mitigating circumstances. Although the trial court found (3)–(7) to be mitigating, it afforded these circumstances little weight.

Following arguments, the trial court ruled that the prosecutor would be able to ask the detective if he was present at Inman's apartment "to apprehend him for [an] unrelated crime." (Tr. at 1381.)

Thus, at trial the prosecutor asked Detective Brian Lemond of the Indianapolis Metropolitan Police Department the following question: "On that day [April 10, 2010], were you investigating another crime in which Michael Inman was a suspect?" (Tr. at 311.) Inman promptly objected, and the trial court overruled his objection. When asked if he was trying to locate Inman on April 10, Detective Lemond responded affirmatively. Shortly thereafter, at Inman's request, the trial court read the jury the following limiting instruction:

> You have now heard evidence that Mr. Inman was a suspect in an unrelated crime, in another case, when law enforcement officers arrested him. The fact that law enforcement officers were seeking Mr. Inman in relation to an unrelated matter is irrelevant to the issues before you in this case. You are not to speculate about that [sic] the other matter is. You are not [sic] consider this information as evidence related to the elements of the offenses charged in this case and you must not give this information any weight in determining your verdict in this case.

(Tr. at 323–24.)

Inman contends that the trial court's decision to allow the prosecutor during direct examination to refer to him as a suspect in another crime was prohibited under Ind. Evidence Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon such request by the accused, the prosecution in a

8

criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

We review the trial court's 404(b) ruling for an abuse of discretion. Thompson v. State, 690 N.E.2d 224, 233 (Ind. 1997).

Here, the trial court ruled that the prosecutor could ask Detective Lemond if, when he arrived at Inman's apartment on April 10, his intent was to apprehend Inman for an unrelated crime. Allowing the jury to hear Inman referred to as a suspect in another crime invited the jurors to make the impermissible inference that because Inman was being investigated for another crime, he commits crimes, and because Inman commits crimes, he killed Pedigo in the course of a robbery. This is precisely the reasoning against which Ind. Evidence Rule 404(b) guards. Therefore, the trial court abused its discretion in permitting the prosecutor to ask Detective Lemond if he was "investigating another crime in which Michael Inman was a suspect." (Tr. at 311.)

Nevertheless, the trial court's abuse of discretion was harmless error. "Trial court error is harmless if the probable impact of the error on the jury, in light of all the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties." Hauk v. State, 729 N.E.2d 994, 1002 (Ind. 2000). Shortly after the jury heard that Inman was wanted for an unrelated crime, the trial court read the jury a limiting instruction that directed them not to speculate about, consider, or give any weight to the "unrelated matter." (Tr. at 323–24.) Furthermore, at no point in the determination of Inman's guilt did the jurors learn that the unrelated crime was a robbery. Because the probable impact of the reference to Inman as a suspect in another crime was minor, such that it did not affect Inman's substantial rights, it was harmless error.

We believe that the trial court should have adopted the defendant's position, so that the prosecutor referred to Inman as a person of interest rather than a suspect in another crime. However, given the limiting instruction read to the jury, the error was harmless.

### III.     "Criminal Spree"

Next, Inman argues that the trial court erred under Ind. Evidence Rule 404(b) by allowing the jury to hear a recording of a telephone call that Inman placed from jail before trial. In the recording, Inman says "So, they just making it look like I was on a criminal spree or whatever. A crime spree. You know how they be talking, aw, he was going crazy and this happened first and then this happened next . . . ." (Inman's Br. at 51.) It is unclear from the transcript of the recording whether the "criminal spree" Inman was referring to was (1) the unrelated April 3, 2010, robbery of a Circilla store in which he was a suspect *and* the Pedigo murder and robbery; or (2) the Pedigo murder *and* the Pedigo robbery.

If Inman was referring to the Pedigo murder *and* the Pedigo robbery, then the trial court was correct in admitting the recording into evidence because Inman's admission was highly relevant to his determination of guilt and not otherwise inadmissible. However, if Inman was referring to the Circilla robbery *and* the Pedigo murder and robbery, then the trial court should have excluded the recording because of the likelihood that the jurors would make Ind. Evidence Rule 404(b)'s impermissible inference: because Inman commits crimes, he murdered Pedigo in the course of a robbery.

As previously stated, the record is unclear as to which scenario Inman was referring to when he alluded to going on a "criminal spree." Under either scenario, Inman has failed to show that he was prejudiced by the trial court's admission of his ambiguous reference to a "criminal spree" into evidence. Consequently, Inman cannot establish that the trial court erred under Ind. Evidence Rule 404(b).

10

## IV.    Exhibit Log

Before trial, the State created an exhibit log, which listed both the exhibits the State planned to offer and the witnesses the State planned to have authenticate the exhibits. The State provided a copy of the exhibit log to the trial court, but not to Inman. Unbeknownst to Inman, the trial court used the exhibit log during trial to track exhibits.

On the afternoon of the third day of trial,[6] when Inman became aware of the exhibit log, he requested a copy. Outside the presence of the jury, arguments were heard. Inman objected to the exhibit log as an ex parte communication between the State and the trial court. Citing work product privilege, the State contended, "I don't think I should be expected to give [Inman] a road map of my case so he knows where I [sic] going with it." (Tr. at 548–49.) The trial court initially decided not to provide a copy to Inman, who immediately objected. Later that day, Inman filed motions for a change of judge and a mistrial.

Ultimately, the trial court marked the exhibit log Court's Exhibit One and admitted it into evidence. Denying Inman's motions, the trial court stated, "[the] State provided [the] Court with an exhibit list. Any [sic] witness list for convenance [sic]. These documents were for administrative purposes and the documents did not address substantive issues." (Tr. at 829.)

"[T]he appropriate standard of review of a trial judge's decision to grant or deny a motion for change of judge . . . is whether the judge's decision was clearly erroneous." Sturgeon v. State, 719 N.E.2d 1173, 1182 (Ind. 1999). Further, "[t]he denial of a mistrial lies within the sound discretion of the trial court, and reversal is required only if the defendant demonstrates that he was so prejudiced that he was placed in a position of grave peril." Gill v. State, 730 N.E.2d 709, 712 (Ind. 2000). "The gravity of the peril turns on the probable persuasive effect of the

---

[6] The jury began deliberations the following day.

11

misconduct on the jury's decision, not on the degree of impropriety of the conduct." Clark v. State, 695 N.E.2d 999, 1004 (Ind. Ct. App. 1998).

Determining that the exhibit log was only of administrative value, the trial court denied both of Inman's motions.  We find no error or abuse of discretion in these rulings.  The purpose of the exhibit log was to aid the trial court in tracking the State's witnesses and exhibits.  Prior to trial, Inman had received lists of witnesses and approximately thirty notices of discovery compliance from the State.  Contained in these notices were lists of physical evidence that "may be used as exhibits a [sic] trial and can be viewed by contacting the undersigned deputy prosecutor." (Inman's App. at 69.)  Additionally, the notices indicated which pieces of evidence had been copied and forwarded to defense counsel and provided information about the prosecutor's "open file policy" for viewing evidence.  (Inman's App. at 69–70.)  Because Inman already possessed or had prior access to the information contained within the exhibit log, the trial court's denial of Inman's motion for a change of judge following Inman's discovery of the ex parte communication was not clearly erroneous.

Likewise, we cannot say that Inman was placed in grave peril by the trial court's possession of the exhibit log.  As Inman has not demonstrated that his lack of possession of the exhibit log had a probable persuasive effect on his defense, he cannot establish that his lack of possession had a probable persuasive effect on the jury's decision, as required by Clark. Therefore, the trial court did not abuse its discretion in denying Inman's motion for a mistrial.

Although we find no error or abuse of discretion in the trial court's denial of Inman's motions, the suggestion of ex parte communication is an issue against which trial courts should guard.  Despite the fact that the exhibit log was provided to the trial court for convenience and administrative purposes, we suggest the better practice going forward would be for trial courts to refuse to accept exhibits when tendered ex parte, unless the opposing party has been given notice and an opportunity to be heard on the matter.

12

## V.     Felony Murder Instruction

Over Inman's objection, the trial court gave Final Instruction No. 7, which provided:

> The determination [of] whether the homicide occurred during [the] commission of the underlying felony of robbery is governed by the concepts of asportation and continuous transaction. A robbery is not complete until there has been an asportation of the property. A crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction. A homicide and robbery are deemed to be one continuous transaction when they are closely connected in time, place, and continuity of action.
>
> *The spirit of our criminal law would not be fostered by a ruling that a defendant could not be convicted of robbing a man he had just killed.*[7]

(Inman's App. at 327 (emphasis added).)  On appeal, Inman challenges the last sentence and claims that the jury should have been instructed that some element of the robbery must have occurred while Pedigo was still alive, but instead this sentence allowed him to be convicted of robbery and felony murder even if all the elements of the robbery occurred after Pedigo's death.

Except for the last sentence, Final Instruction No. 7 tracks our reasoning in <u>Krempetz</u>. There, the defendant and two others held Barbara Jo Keim at gunpoint for her ATM card and PIN.  <u>Krempetz</u>, 872 N.E.2d at 608.  After driving Keim to her credit union, Krempetz and an accomplice withdrew two hundred dollars from her account and drove Keim to a cornfield, where Krempetz fatally shot her in the head.  <u>Id.</u>  Immediately thereafter, the two men divided the two hundred dollars.  <u>Id.</u>

---

[7] This sentence is a quote from a footnote in <u>Robinson v. State</u>, 693 N.E.2d 548, 554 n.2 (Ind. 1998) (holding Robinson's conviction for robbery not barred by fact victim died before property taken).

13

Although Keim's money was first taken from her at the site of the ATM, the money was carried away from that location and "did not come to rest until after Keim was fatally shot and Krempetz received a share of the robbery proceeds." Id. at 611. Because there was a "continuing chain of events from the inception of the robbery to the murder that was closely connected in time and distance[,] [t]he law therefore treats the two events as part of one continuous transaction." Id. We concluded that there was sufficient evidence before the trial court to support its finding that the State proved beyond a reasonable doubt that Krempetz intentionally killed Keim while committing or attempting to commit robbery. Id.

Under our reasoning in Krempetz, the robbery of Pedigo's store was not complete until Inman carried the property away; therefore, the robbery of Pedigo's store and the murder of Pedigo are closely connected in time, place, and continuity of action. As such, they are deemed to be one continuous transaction. Inman's contention to the contrary—that he could not be convicted of robbing a man he had just killed if all the elements of the robbery occurred after the man's death—is without merit.

Despite Inman's mischaracterization of the law, he is correct in arguing that the last sentence should not have been given. Instead of dispassionately stating the law in order to guide the jury's deliberations, the sentence appears to argue for the State.

"In reviewing a claim of error in jury instructions, an appellate court considers the effect of an erroneous instruction in light of the jury instructions as a whole." LaPorte Cmty. Sch. Corp. v. Rosales, 963 N.E.2d 520, 525 (Ind. 2012) (internal citation omitted). Instructional error is harmless "where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise" but "will result in reversal when the reviewing court 'cannot say with complete confidence' that a reasonable jury would have rendered a guilty verdict had the instruction not been given." Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001) (internal citation omitted).

14

We agree with the State that even though the last sentence of Final Instruction No. 7 was improper, any instructional error was harmless since the evidence pointed "overwhelmingly to a single continuous crime and there was no evidence that Defendant acted out of necessity or self-defense." (State's Br. at 41.) Furthermore, the problematic last sentence followed a paragraph that correctly set forth when robbery and murder are considered one continuous transaction. Because the erroneous instruction did not prejudice Inman, we can say with complete confidence, under the Dill test, that a reasonable jury would have rendered a guilty verdict had the last sentence not been given.

## VI. "Asportation"

During deliberations, the jury sent a note asking for a dictionary or a definition for the word "asportation," appearing in Final Instruction No. 7. Over Inman's objection, the trial court sent the jury a note stating "you may not have a dictionary. Black's Law Dictionary defines asportation as: [t]he removal of one things [sic] from one place to another, the carrying away of goods." (Tr. at 931.) As a basis for its decision to provide the jury with the definition, the trial court referred to Ind. Jury Rule 28, which states:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

We review a trial court's manner of instructing the jury for an abuse of discretion. Cline v. State, 726 N.E.2d 1249, 1256 (Ind. 2000).

Ind. Code § 34-36-1-6 (2008) provides that, after the jury retires for deliberation,

15

> [i]f . . . the jury desires to be informed as to any point of law arising in the case[,] the jury may request the officer to conduct them into court, where the information required *shall be given* in the presence of, or after notice to, the parties or the attorneys representing the parties.

(emphasis added).  Furthermore, we determined in <u>Tincher v. Davidson</u> that "Indiana Jury Rule 28 urges that trial judges facilitate and assist jurors in the deliberative process, in order to avoid mistrials."  762 N.E.2d 1221, 1224 (Ind. 2002).  "Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court . . . may directly answer the jury's question (either with or without directing the jury to reread the other instructions)."  <u>Id.</u>

Under Ind. Code § 34-36-1-6, the trial court was obligated to respond to the jury's inquiry into the definition of "asportation," a point of law.[8]  And that is exactly what the trial court did.  Although in its discussion with counsel the trial court referred to Ind. Jury Rule 28, which is triggered only where the jury has reached an impasse, and though such reference was inaccurate, in this case its actions were completely correct under Ind. Code § 34-36-1-6.[9]  Even if the trial court's provision of a definition was not mandated by Ind. Code § 34-36-1-6, the trial court had the discretion to respond to the jury's question.  <u>Foster v. State</u>, 698 N.E.2d 1166, 1170 (Ind. 1998).

---

[8] In <u>Krempetz</u>, asportation is defined as "the carrying away of the property." 872 N.E.2d at 610.

[9] Importantly, Ind. Jury Rule 28 is predicated on the jury reaching an impasse.  Should the jury reach an impasse, then the trial court *may* assist the jurors in their deliberation.  An impasse is not necessary for Ind. Code § 34-36-1-6 to apply.  This section is triggered when the jury, after retiring for deliberation, requests to be informed of a point of law.  Then the trial court *must* provide the needed information.  However, if the jury requests information and neither Ind. Jury Rule 28 nor Ind. Code § 34-36-1-6 is applicable, "the trial court nevertheless has discretion to provide the requested information. . . . The trial court, however, must exercise its discretion extremely cautiously, consistent with Indiana Code Section 35-37-2-2 and case law in this area." <u>Foster v. State</u>, 698 N.E.2d 1166, 1170 (Ind. 1998).

Not only was the result of the trial court's actions correct under Ind. Code § 34-36-1-6, but Inman himself cannot explain how he was possibly harmed by the trial court's response to the jury's inquiry. Consequently, the trial court did not abuse its discretion in providing the jury with a definition of "asportation."

## VII. Denial of Surrebuttal

In the first part of its closing argument, the State focused on undisputed facts: Inman was seen in Pedigo's store fifteen minutes before Pedigo was found dead; Inman was found in possession of rings taken from the store and the gun used to kill Pedigo. Applying the facts of the case to the elements of the charged offenses, the State argued that Inman knowingly killed Pedigo in the course of a robbery. According to the State, "there is nothing before [the jury] from an evidentiary standpoint to suggest that David Pedigo, in my [sic] way, attacked Michael Inman." (Tr. at 882.)

Arguing that the evidence "supports that Michael Inman acted in self-defense," Inman told the jury that the State had failed to produce evidence proving beyond a reasonable doubt that Inman had "intended to rob Dave Pedigo before Dave Pedigo pulled his gun on him." (Tr. at 912.) Inman contended that the evidence could not support a conviction for either murder or robbery.

On rebuttal, the State refuted Inman's claim of self-defense. Pointing out that "[n]othing in that back area is disturbed," the State argued that if there had been a struggle for the gun, not only would it have occurred where Inman was shot, but also that there would be evidence of that struggle in the immediate area. Next, the State claimed that the location of blood spatter was telling:

17

What's the significance of the blood on the side of the safe, because that's evidence and that actuals [sic] us a lot. What does that blood right there tell us? Ladies and gentlemen, when he was shot, *David Pedigo was on his knees*. That blood starts right there, right there where his head's at and he's on his knees, he isn't fighting anybody for anything. If he was standing up, if there was a struggle that blood, the blood spatter that the detective talked about is going to be higher up. . . . That is probably the most telling piece of evidence in this case.

(Tr. at 918–19 (emphasis added).)

After the State concluded, Inman moved under Ind. Jury Rule 27 to respond to "a new fact that the State brought up" on rebuttal: that Pedigo had been on his knees when he was shot. (Tr. at 922.) The trial court denied his request. On appeal, Inman asserts that the trial court erred; according to him, the State's argument was misleading and not supported by the evidence. He contends that the trial court was required to allow surrebuttal but can cite to no case supporting his argument.

Ind. Jury Rule 27 provides, in pertinent part:

If the parties argue the case to the jury, the party with the burden of going forward shall open and close the argument. The party which opens the argument must disclose in the opening all the points relied on in the case. If, in the closing, the party which closes refers to any new point or fact not disclosed in the opening, the adverse party has the right to reply to the new point or fact. The adverse party's reply then closes the argument in the case.

4This language closely tracks the language of Ind. Code § 35-37-2-2(4) (2008):

[T]he prosecuting attorney shall disclose in the opening all the points relied on in the case, and if in the closing he refers to any new point or fact not disclosed in the opening, the defendant or his

18

counsel may reply to that point or fact, and that reply shall close the argument of the case.

In <u>Goodman v. State</u>, Goodman requested surrebuttal under Ind. Code § 35-37-2-2(4). 588 N.E.2d 507, 508 (Ind. 1992). We determined that "when the State's rebuttal is invited by comments made by defense counsel during closing arguments, the defense has no right under the statute to respond to the rebuttal." <u>Id.</u>

This same reasoning applies in determining whether a trial court erred under Ind. Jury Rule 27 by denying surrebuttal. In closing argument, Inman's counsel repeatedly argued that the evidence supported Inman's claim of self-defense; therefore, the State was entitled to rebut his argument by calling the jury's attention to the location of the blood spatter and inferring that Pedigo was on his knees when he was shot. The trial court did not err in denying Inman's motion for surrebuttal.

## VIII.   Cumulative Error

Next, Inman contends that the cumulative effect of errors made by the trial court throughout his trial and examined above denied him his due process right to a fair trial under the Fourteenth Amendment to the United States Constitution and his right to complete justice under Article I, Section 12 of the Indiana Constitution. This court has been willing to assume "for the sake of argument, that under some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in isolation," but not where it has been "clear in light of the evidence of guilt that no prejudice resulted from any of the erroneous rulings, individually or cumulatively." <u>Hubbell v. State</u>, 754 N.E.2d 884, 895 (Ind. 2001).

As explained above, although the trial court erred by allowing the State to refer to Inman as a suspect in another crime, we found that error to be harmless. We further determined that the trial court erred in instructing the jury that "[t]he spirit of our criminal law would not be fostered

19

by a ruling that a defendant could not be convicted of robbing a man he had just killed," but we also found that error to be harmless. In addition, as to Inman's allegation that the trial court erred in allowing the jury to hear him reference a "criminal spree," we were unable to find any prejudice.

Inman is "entitled to a fair trial, not a perfect trial." Myers v. State, 887 N.E.2d 170, 175 (Ind. Ct. App. 2008), trans. denied. "Upon a thorough review of the record . . . we are convinced that these imperfections . . . were more isolated than pervasive in nature." Id. at 196. Taken as a whole, not only were all errors harmless, but the cumulative effect of these errors was minor at best and thus did not deprive Inman of his right to a fair trial or his right to complete justice. Because Inman in no way suffered any prejudice from cumulative error, he is not entitled to a reversal of his convictions.

### IX.  Appellate Rule 7(B) Sentence Review

Inman's final argument is that his sentence of life imprisonment without the possibility of parole is not appropriate under Ind. Appellate Rule 7(B), which provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." To support his contention that his sentence is inappropriate in light of the nature of the offense and his character, Inman discusses at length the facts and sentences in other LWOP cases and compares them to his.

As we stated in Conley v. State, "life without parole is reserved for use in only the most heinous of crimes that so shock our conscience as a community." 972 N.E.2d 864, 880 (Ind. 2012). Despite Inman's contention to the contrary, his heinous crime is befitting a sentence of LWOP. While on parole, he beat and executed a man in the course of robbing his store. In

20

addition, Inman has an extensive criminal history, including five other felony convictions as an adult.

The trial court noted several mitigating circumstances but stated "I believe the aggravating circumstances do, in fact, outweigh the mitigating circumstances presented and found by this [c]ourt." (Tr. at 1118.)  We agree.  Because we find appropriate Inman's sentence for life in prison without the possibility of parole for the murder of Dave Pedigo, we decline to revise his sentence.

## Conclusion

Accordingly, we affirm Inman's conviction and sentence.

Dickson, C.J., Rucker, and Rush, J.J., concur.

**Massa, J., concurring in result.**

I would find no error, harmless or otherwise, in the trial court's instructing of the jury on felony murder and robbery. When the judge read aloud that "the spirit of our criminal law would not be fostered by a ruling that a defendant could not be convicted of robbing a man he had just killed," he was not arguing for the State, as the majority suggests; he instead was correctly stating the law verbatim as this Court has declared it to be, Robinson v. State, 693 N.E.2d 548, 554 n.2 (Ind. 1998), and attempting to avoid the very confusion that subsequently ensued over the definition of "asportation" that the majority takes up in the next section of the opinion. Instead of leaving the jury with only an opaque, confusing instruction discussing "asportation" (who wouldn't have to consult Webster's?) and continuing crimes, the judge quite correctly told the jury that you can't avoid a robbery conviction by killing your victim before you take his property. That is simple, to-the-point guidance for lay jurors and should be encouraged, not admonished.

I otherwise fully concur.