## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2015, 7:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Maria-Teresa Kuzmic
John Pinnow
Deputies Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyrus D. Coleman,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent,*

August 11, 2015

Court of Appeals Case No.
20A03-1407-PC-247

Appeal from the Elkhart Circuit Court
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1202-PC-14

**Robb, Judge.**

# Case Summary and Issue

A jury found Tyrus Coleman guilty of attempted murder on March 18, 2009. In 2010, this court reversed Coleman's conviction on direct appeal. Our supreme court granted transfer and affirmed Coleman's conviction the following year. Thereafter, Coleman filed a petition for post-conviction relief wherein he alleged ineffective assistance of counsel. The post-conviction court denied Coleman's petition on June 25, 2014. Coleman appeals the denial of post-conviction relief. His sole issue is whether the post-conviction court erred in concluding that trial counsel was not ineffective.[1] Concluding none of the errors alleged by Coleman amount to ineffective assistance of counsel, alone or cumulatively, we affirm.

# Facts and Procedural History

The relevant facts were set forth by our supreme court in a decision on direct appeal:

> In a tragic incident occurring March 18, 2007, Tyrus Coleman shot his friends Anthony Dye and Dye's son Jermaine Jackson during a confrontation on Coleman's property, where Coleman operated a music recording studio. The confrontation stemmed from an event occurring approximately four months earlier in which Omar Sharpe, one of Coleman's musician clients, robbed Dye at gunpoint. Coleman

---

[1] Coleman was represented by two attorneys at trial—John Kindley and John Hosinski. Hosinski conducted voir dire and gave closing argument, and Kindley was responsible for all other aspects of the case.

retrieved part of the stolen property from Sharpe and returned it to Dye. Jermaine was irritated when he later learned that Sharpe had robbed his father, but Dye asked him not to get involved. On the afternoon of the shootings, Jermaine discovered that Sharpe was present at Coleman's studio and frantically phoned Dye to "[c]ome over here right now." Armed with a handgun Dye headed to Coleman's studio. In the meantime an armed and agitated Jermaine pushed open the door to the studio and attempted to enter. Sharpe, who was present inside, prevented Jermaine's entry and closed the door. Exiting the studio Coleman attempted to calm Jermaine and to dissuade him from trying to enter. Coleman called a neighbor to come over to help calm Jermaine; he also called his business partner to inform him of the situation. The neighbor testified that he tried to talk with Jermaine by telling him what [Jermaine] was doing "wasn't worth it. Just go ahead and leave. There was kids around and people around that didn't have nothing to do with what they was angry about." According to the witness Jermaine responded by saying, "F* *k that. He didn't think about that s* *t when he did the s* *t to my Daddy." Coleman armed himself and walked back and forth in front of the studio door holding his handgun at his side. As Coleman was making a phone call, Dye came into the yard through a front gate carrying a handgun which was pointed toward the ground. Dye strode toward his son Jermaine, who was standing next to Coleman on the patio in front of the studio. Within three seconds, the following occurred: Dye stepped onto the patio where Jermaine and Coleman were standing. As Dye stepped in front of Coleman, Coleman raised his gun and fired at Dye, who immediately fell to the ground. Coleman then shot Dye a second time. At that point Coleman "turned to Jermaine." Coleman saw that Jermaine's handgun, which before that time had been concealed under his shirt and in a holster, was "pointed at [Coleman]"; and Coleman shot Jermaine. Jermaine fell to the ground and died at the scene as a result of his injuries. After the shooting, Coleman drove to Milwaukee disposing of his weapon along the way. Several days later he returned to Elkhart and surrendered to the police.

The State charged Coleman with murder, a felony, for the death of Jermaine and attempted murder, a Class A felony, for shooting Dye. During a jury trial conducted in February 2008 Coleman testified and

admitted the shootings, but contended that his actions against both Jermaine and Dye were justified on the basis of self-defense. The jury returned a verdict of not guilty on the murder charge, but was unable to reach a verdict on the attempted murder charge. The trial court thus declared a mistrial on that count and scheduled another trial. Prior to retrial Coleman filed a motion to dismiss contending a subsequent trial on attempted murder was barred by collateral estoppel and would therefore violate the Double Jeopardy Clauses of both the United States and Indiana Constitutions. After a hearing, the trial court denied the motion. A retrial ensued, at the conclusion of which the jury found Coleman guilty as charged. Thereafter the trial court sentenced him to a term of forty-five years.

*Coleman v. State*, 946 N.E.2d 1160, 1163-64 (Ind. 2011) (record citations and footnotes omitted).

[3]    In a divided opinion, this court reversed Coleman's conviction on grounds of collateral estoppel. *Coleman v. State*, 924 N.E.2d 659 (Ind. Ct. App. 2010). Our supreme court subsequently granted transfer and on May 18, 2011, affirmed Coleman's conviction, concluding collateral estoppel did not bar retrial. *Coleman*, 946 N.E.2d at 1166. On February 2, 2012, Coleman filed a pro se petition for post-conviction relief that was later amended by counsel. Coleman alleged that he was entitled to relief because his trial and appellate counsel had been ineffective in numerous respects.

[4]    The post-conviction court held a two-day hearing on June 27, 2013 and November 25, 2013. On June 25, 2014, following a hearing, the post-conviction court issued a ten-page order denying Coleman's petition. Coleman now appeals.

# Discussion and Decision

## I. Standard of Review

### A. Post-Conviction Relief

A defendant who has exhausted the direct appeal process may challenge the correctness of his conviction and sentence by filing a post-conviction petition. *Parish v. State*, 838 N.E.2d 495, 499 (Ind. Ct. App. 2005). Post-conviction procedures do not provide an opportunity for a super appeal. *Id.* Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.*

In reviewing the judgment of a post-conviction court, this Court considers only the evidence and reasonable inferences supporting its judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. *Id.* at 468-69. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 469. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Id.*

[7] Where, as here, the post-conviction judge is the same judge who conducted the original trial, such a jurist is uniquely situated to assess whether counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and whether, but for counsel's unprofessional conduct, there was a reasonable probability that the jury would have reached a different verdict. *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied; see also State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because judge presided at both original trial and post-conviction hearing, judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of a fair trial).

## B. Ineffective Assistance of Counsel

[8] Coleman argues that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel. We review claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State*, 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied*.

[9] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference on appeal. *Wrinkles v. State*, 749

N.E.2d 1179, 1195 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002). Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied.* We will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[10] If we can dismiss an ineffective assistance of counsel claim on the prejudice prong, we need not address whether counsel's performance was deficient. *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). Rather, we may proceed to evaluate whether the alleged error rendered the result of petitioner's trial fundamentally unfair or unreliable. *Cooper v. State*, 687 N.E.2d 350, 353 (Ind. 1997). When making this evaluation, we consider the totality of the evidence, taking into account the effect of the alleged error. *Id.* A defendant is "entitled to a fair trial, not a perfect trial." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (citation omitted).

## II. Assertions of Ineffective Assistance of Trial Counsel

[11] At the outset, we note that the post-conviction court's order discussed a video recording of the shooting as follows:

> The video taped recording of the actual shooting herein . . . shows Dye entering the backyard until he is twice shot by [Coleman]; Dye has his gun to his side, and is walking in the direction of and looking at his

son, Jermaine Jackson. [Coleman] appears from the shadow and from the side and behind Dye, and as Dye walks past [Coleman] with his gun down, [Coleman] raised his own gun and shoots Dye in the back of his head behind his ear. As Dye falls to the ground, [Coleman] shoots him again. It is not until this separate and distinct crime occurs that Dye's son Jermaine pulls his weapon and shoots at [Coleman]. The evidence presented at trial was also that after the shooting, [Coleman] paced in the backyard, had a cell phone but did not call emergency personnel or law enforcement, but rather fled with his weapon, later throwing the gun into a body of water and left the state.

Appendix to Brief of Petitioner-Appellant at 344. In light of this "overwhelming evidence of [Coleman's] guilt," the post-conviction court concluded that "it [was] unlikely that the outcome of the trial would have been any different even if counsel would have done everything [Coleman] alleges was deficient. . . . [Coleman] has not shown that the outcome of his trial likely would have been different if his trial counsel would have performed differently." *Id.* (citation omitted). We nonetheless address Coleman's numerous allegations of ineffective assistance of trial counsel.[2]

---

[2] We have counted seventeen allegations of ineffective assistance of counsel, which we have consolidated as appropriate. As the Ninth Circuit has said:

Like other mortals, appellate judges have a finite supply of time and trust; every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point – "just in case"—is likely to serve her client less effectively than one who concentrates solely on the strong arguments.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

[12] Coleman specifically contends that trial counsel was ineffective because counsel failed to: 1) question prospective jurors about their views on self-defense during voir dire; 2) impeach Dye with two prior inconsistent statements, cross-examine Dye about his gun, make an offer of proof about Dye's pending charges, and tender a jury instruction on Dye's use immunity; 3) advise Coleman's character witnesses that there was a separation of witnesses order in place and make an offer of proof; 4) call Omar Sharpe and Laquisha Hunt as witnesses; 5) discuss the trial court's order on the State's motion in limine with defense witnesses; 6) present the entire video of the shooting to the jury; 7) argue a consistent defense during closing argument; 8) argue the State had the burden of disproving self-defense beyond a reasonable doubt; and 9) tender an instruction on the defense of property. Coleman also argues that trial counsel Kindley admitted his deficient trial performance and that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel.

## A. Voir Dire

[13] Coleman first contends he is entitled to post-conviction relief because trial counsel did not question prospective jurors about their views on self-defense during voir dire. Coleman makes only a conclusory statement that this failure constituted ineffective assistance of counsel and offers no supporting argument or authority. He has therefore waived appellate review of this contention. *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (citing Indiana Appellate Rule

46(A)(8)(d) and explaining that failure to support an argument with appropriate citations to legal authority waives that argument for appellate review).

[14] Waiver notwithstanding, we find no error. Defense counsel informed the prospective jurors that the case was about Coleman's intent. Specifically, the case was about whether Coleman intended to murder Dye or had simply intended to defend himself. Our review of the evidence reveals that the State questioned the prospective jurors about their ability to 1) assess this issue with direct and circumstantial evidence; 2) judge the credibility of witnesses; and 3) hold the State to its burden of proof. Further, we agree with the State that the prospective "jurors answered questions relevant to Coleman's defense in a way that allowed Coleman's team to concentrate on studying and noting the jurors' responses." Brief of Appellee at 10. We further agree that "[t]his is why [trial counsel] ended the last venire panel by saying: '[the State] asked everything. I cannot think of a legitimate question to ask any of you that he hasn't already asked you. So I'm going to turn to the Court and say no questions.'" Transcript at 147.[3] *See Wilkes v. State*, 984 N.E.2d 1236, 1246-48 (Ind. 2013) (holding trial counsel not ineffective for failing to question a juror in part because the State questioned the juror and the juror's answers "were apparently satisfactory to both parties[,]" and noting that jury selection is a matter of strategy within trial

---

[3] We cite to the transcript of the 2009 trial, which is the subject of this appeal, as Transcript; to the transcript of the 2008 trial as 2008-Transcript; and to the transcript of the post-conviction hearing as PCR-Transcript.

counsel's discretion).  In addition, Coleman has failed to show any prejudice in the makeup of the jury.  Coleman has failed to meet his burden to show that trial counsel was ineffective for failing to question the prospective jurors about their views on self-defense.

# B. Testimony of Anthony Dye

Coleman next argues that defense counsel demonstrated deficient performance in several respects in dealing with the testimony of witness and victim Dye.  The State responds that Coleman has failed to show any deficiency or prejudice.  We agree with the State.

## 1. Failure to Impeach Dye with Prior Inconsistent Statements

At Coleman's first trial, Dye testified that when he entered Coleman's premises, he might have asked his son where Sharpe was by asking, "[W]here that n****r at[?]" 2008-Tr. at 135.  At the second trial, Dye testified that he did not say "anything to anybody" when he entered the premises.  Tr. at 156.  Also at Coleman's first trial, Dye testified that he did not believe Coleman was involved when Sharpe robbed him.  At the second trial, Dye testified that when the robbery first happened, he gave Coleman the "benefit of the doubt [even though] everybody else . . . kept putting him in it, but I protected him till the

end." Tr. at 160. Coleman argues trial counsel was ineffective for failing to impeach Dye with these prior inconsistent statements.[4]

[17] Impeachment is the process of attacking the credibility of a witness who has given testimony. *Ellyson v. State*, 603 N.E.2d 1369, 1375 (Ind. Ct. App. 1992). Impeachment is an important matter at trial where the only direct evidence of the defendant's guilt is contained in the testimony of one witness. *See id.* Here, however, evidence of Coleman's guilt was contained in the testimony of many witnesses as well as in a video of the crime. Coleman has failed to meet his burden to show that there is a reasonable probability that the result of the proceeding would have been different had he impeached Dye with his prior inconsistent statements.

### 2. Failure to Cross-Examine Dye about his Gun

[18] Coleman next argues that trial counsel was ineffective for failing to ask Dye if his gun was loaded when he entered Coleman's premises. According to Coleman, trial counsel's failure to ask this question was deficient performance because "[e]vidence the alleged victim was armed with a loaded weapon is a fact that would reasonably place Coleman in fear or apprehension of death or serious bodily injury." Appellant's Br. at 23. However, it was not necessary for

---

[4] Especially regarding the second set of so-called inconsistent statements, we agree with the State that Coleman "pl[ied] the record for a contradiction between Dye's testimony at his first and second trials" and failed to find a significant one. Appellee's Br. at 14. We nevertheless address Coleman's contention.

Coleman to know whether the gun was loaded to be placed in fear. *See Alstatt v. State*, 455 N.E.2d 323, 324 (Ind. 1983) ("We find it ludicrous to argue that a person has no reason to be in fear unless he knows that a gun pointed at him is loaded."). Coleman has failed to show that the result of the proceeding would have been different had trial counsel asked Dye if his gun was loaded when he entered Coleman's premises.

### 3. *Failure to Make an Offer of Proof on Dye's Pending Charges*

The State sought and was granted a pretrial order to exclude evidence that Dye had pending charges for being a serious violent felon in possession of a firearm and for being an habitual offender arising out of this incident. Coleman argues that trial counsel was ineffective for failing to make an offer of proof regarding these charges, as they were relevant to the prosecutor's request for use immunity. Although Coleman details how and why he believes this was deficient performance, he has wholly failed to allege that he was prejudiced by this failure. Coleman has failed to meet his burden to show that there is a reasonable probability that the result of the proceeding would have been different if he had made such an offer of proof.

### 4. *Failure to Tender an Instruction on Dye's Use Immunity*

In addition, Coleman argues that trial counsel was ineffective because he did not tender a jury instruction on use immunity. In support of his argument, he directs us to *J.J. v. State*, 858 N.E.2d 244, 252 (Ind. Ct. App. 2006), where this court reversed the denial of post-conviction relief because trial counsel had

failed to inform the jury that a witness was testifying pursuant to a grant of use immunity. Here, however, the jury was informed that Dye was testifying pursuant to use immunity and told that any evidence Dye gave could be used in a criminal proceeding against him. Tr. at 165. Coleman has again failed to meet his burden to show a reasonable probability that the result of the proceeding would have been different if he had tendered a use immunity instruction.

## C. Failure to Advise Character Witnesses about Separation of Witnesses Order and Failure to Make an Offer of Proof

[21] Coleman next argues that trial counsel was ineffective for failing to advise his character witnesses, Thomas Rogers, Mikkilyn Holderad, and Don Porter, about the trial court's separation of witnesses order. According to Coleman, because trial counsel failed to advise the witnesses about this order, they were not allowed to testify about his reputation for truthfulness.[5] Coleman further argues that trial counsel was ineffective because he failed to make an offer of proof regarding the content of their testimony.

[22] Indiana Rule of Evidence 608(a) provides that a witness's credibility may be supported by testimony about the witness's reputation for having a character for

[5] In fact, though, counsel only called Rogers, whose testimony was excluded in part because he had sat in the courtroom all day in violation of the separation of witnesses order but also because he knew Coleman only through work and could not offer an opinion of Coleman's reputation for truthfulness in the community.

truthfulness or by testimony in the form of an opinion about that character. However, the rule further provides that evidence of a truthful character is admissible only after the witness's character for truthfulness is attacked. Here, because the State did not attack Coleman's character for truthfulness, the character evidence would not have been admissible and Coleman was not prejudiced by the exclusion of Rogers's testimony or by the failure to call the other character witnesses. Further, because evidence about Coleman's reputation for truthfulness was not admissible, Coleman was not prejudiced by trial counsel's failure to make an offer of proof.

## D. Failure to Call Omar Sharpe and Laquisha Hunt as Witnesses

[23] Coleman next argues that trial counsel was ineffective for failing to call Omar Sharpe and Laquisha Hunt as witnesses. The decision regarding what witnesses to call is a matter of trial strategy which we will not second-guess. *Wrinkles*, 749 N.E.2d at 1201.

[24] Coleman contends that trial counsel was ineffective for failing to call Sharpe as a witness because Sharpe would have corroborated his testimony that he was not involved in the robbery. However, our review of the post-conviction hearing reveals that trial counsel decided during the trial not to call Sharpe as a witness and had him transported back to jail. It was not until closing argument that the State suggested that Coleman was involved in the robbery. Trial counsel, who "never even imagined" Coleman's involvement in the robbery

would be an issue at trial, PCR-Tr. at 67, realized that he could have questioned Sharpe about the issue had he called him to the stand during trial. The fact that trial counsel wished in retrospect that he had called Sharpe as a witness based on the State's suggestion in closing argument does not amount to deficient performance and ineffective assistance of counsel. "Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight." *Timberlake v. State,* 753 N.E.2d 591, 605 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002) (citation omitted).

[25] Coleman further complains that trial counsel did not call Hunt, Coleman's girlfriend at the time of the incident, as a witness. Hunt testified at the post-conviction hearing regarding threats she allegedly heard Dye make to Coleman prior to the shooting. Our review of the evidence leads us to agree with the State, that Hunt's testimony about overhearing Dye threaten Coleman during a phone call "gives every indication of having been fabricated." Appellee's Br. at 29. At the very least, her testimony was very imprecise. In fact, Hunt's account of the alleged threat was contradicted by Coleman's testimony at the trial. There is nothing in Hunt's post-conviction testimony to support the notion that failing to call her as a witness to give that same dubious testimony at Coleman's retrial would have produced a different result.

[26] The post-conviction court concluded that trial counsel made strategic decisions not to call Sharpe and Hunt as witnesses. The evidence as a whole does not

lead unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *See Hall*, 849 N.E.2d at 468.

## E. Failure to Discuss the Trial Court's Order on the State's Motion in Limine with Defense Witnesses

[27] The trial court entered an order in limine barring evidence that the day of the shooting Jermaine went to a gun range and that Jermaine had been killed during Coleman's confrontation with Dye. At trial, after the State rested, trial counsel called Yarrum Murray as Coleman's first witness and elicited testimony that Jermaine had gone to the gun range before the shooting. The State objected, and during a subsequent hearing outside the presence of the jury, the trial court learned that trial counsel had not informed either Murray or Jamie Allen about the order in limine. The trial court ordered trial counsel to provide the witnesses with copies of the order and to be sure that the witnesses understood it. The trial court then previewed Murray's testimony and excluded it, including his testimony that Jermaine went to a gun range the day of the shooting. The court later previewed Allen's testimony and also excluded it, including testimony that Dye called Jermaine before the shooting. The trial court further concluded that trial counsel had not intentionally violated the order.

[28] Coleman now argues that trial counsel was ineffective for failing to discuss the trial court's order on the State's motion in limine with Murray and Allen. According to Coleman, trial counsel's failure to talk to Murray about the order

"resulted in Murray's testimony [that he went to the gun range with Jermaine the morning of the shooting] being excluded at trial." Appellant's Br. at 29. Coleman claims that he was prejudiced because this evidence was "admissible to show Jermaine's state of mind and relevant to Coleman's claim of self-defense." *Id.* at 28.

[29] First, there is no evidence that Murray's testimony was excluded because trial counsel failed to discuss the order with him. The trial court concluded that trial counsel had not intentionally violated the order. Second, we agree with the State that "because there is no evidence that Coleman was aware of Jermaine's trip to the shooting range, Jermaine's [alleged] trip could not have played any role in Coleman's appreciation of the situation near the studio," Appellee's Br. at 32. Coleman could therefore not have been prejudiced by the exclusion of this evidence.

[30] Coleman also claims that trial counsel's failure to discuss the motion in limine with Allen resulted in the exclusion of evidence that Dye called Jermaine just before the shooting. Again, there is no evidence that Allen's testimony was excluded because trial counsel failed to discuss the order with her. There is also no evidence that Coleman was aware of Dye's alleged call to Jermaine. Coleman could therefore not have been prejudiced by the exclusion of this evidence.

## F. Failure to Present the Entire Video of the Shooting to the Jury

[31] Coleman next argues that trial counsel was ineffective "in not sufficiently familiarizing himself with the equipment used to play the surveillance video as to ensure that the portion played for the jury showed that Jermaine had a handgun before Coleman shot Dye." Appellee's Br. at 33-34. According to Coleman, he was prejudiced because without seeing the portion of the video that showed Jermaine carrying a handgun, the jury was not provided evidence supporting his version of the events that he was facing two-armed men. However, our review of the evidence reveals that two eyewitnesses testified that Jermaine was armed. In addition, during closing argument, the State conceded that Jermaine was armed. Coleman has failed to show that the result of the proceeding would have been different had the jury seen that portion of the video showing Jermaine carrying a handgun.

## G. Arguing Inconsistent Defenses

[32] During closing argument, trial counsel argued both that Coleman 1) shot Dye in self-defense and 2) did not have the intent to kill Dye. Coleman now contends that trial counsel was ineffective for arguing inconsistent defenses.

[33] However, the choice of defenses for trial is a matter of trial strategy. *Van Evey v. State,* 499 N.E.2d 245, 248 (Ind.1986). Here, the State points out that:

> The evidence proving that Coleman shot Dye has always been overwhelming and uncontested. Opportunities which might be available in other attempted-murder cases, such as disputes over proof of the perpetrator's identity; suppression of incriminating evidence; or challenges to evidence proving commission of the physical acts required to commit the offense, have always been unavailable to Coleman's counsel. Coleman's attorneys wisely selected the only battlefield available to them, namely, Coleman's intent. The facts surrounding Coleman's actions permitted counsel the opportunity to argue for reasonable doubt as to whether Coleman had even committed the charged offense in the first place, *and to also argue* that even if Coleman had committed the offense, he was justified in doing so.

Appellee's Br. at 37-38 (emphasis in original). We will not second-guess trial strategy on appeal. *Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997), *trans. denied.*

[34] Coleman nevertheless argues that *Page v. State*, 615 N.E.2d 894 (Ind. 1993), supports his claim that trial counsel was ineffective for arguing inconsistent defenses. There, our supreme court held that trial counsel's failure to submit a voluntary manslaughter instruction did not constitute ineffective assistance of counsel in light of his theory of self-defense. *Id.* at 895-96. However, our supreme court also stated that trial counsel could have requested such an instruction and that the trial court could have properly given it, *id.* at 895, which supports the State's argument that trial counsel was not ineffective for strategically arguing both defenses. Coleman has failed to demonstrate that trial counsel's strategic decisions fell below an objective standard of reasonableness.

# H. Failure to Argue Burden of Proof in Closing Argument

[35]    Coleman also argues that trial counsel was ineffective for failing to argue in closing argument that the State had the burden of disproving self-defense beyond a reasonable doubt. Coleman is correct that the State has the burden of disproving the claim of self-defense beyond a reasonable doubt, s*ee McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998), and he concedes that the jury was so instructed. He also concedes that trial counsel mentioned the self-defense instruction during closing argument. His sole contention is that trial counsel should have mentioned the State's burden again during closing argument. Coleman makes only a conclusory statement that this failure constituted ineffective assistance of counsel and offers no supporting argument or authority. He has therefore waived appellate review of this contention. *See Pierce*, 29 N.E.3d at 1267. Waiver notwithstanding, we find no error. Our review of the evidence reveals that during trial, trial counsel repeatedly argued the elements of self-defense and the State's burden to prove Coleman's guilt beyond a reasonable doubt. Coleman has failed to meet his burden to show that there is a reasonable probability that the result of the proceeding would have been different had he mentioned the State's burden of proof again during closing argument.

# I. Failure to Tender a Jury Instruction on the Defense of Property

[36]    In addition, Coleman argues that trial counsel was ineffective for failing to tender a jury instruction on the defense of property. Indiana Code section 35-41-3-2(c) (2012) provides that with respect to property other than a dwelling or curtilage, a person is justified in using reasonable force against another person if the person reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass or criminal interference with property lawfully in the person's possession. However, a person is only justified in using deadly force when it is necessary to prevent serious bodily injury to the person or a third person, or the commission of a forcible felony. Ind. Code § 35-41-3-2(a) (2012). A jury instruction must be supported by the evidence. *Taylor v. State*, 602 N.E.2d 1056, 1061 (Ind. Ct. App. 1992), *trans. denied*.

[37]    Here, Coleman specifically argues that there is evidence to support this instruction because Jermaine's action in trying to break into Coleman's recording studio while armed with a handgun constituted a forcible felony. However, the State correctly points out that Jermaine's attempt to enter the studio ended without the use of deadly force before Coleman armed himself and shot Dye. We find no evidence to support this instruction. Therefore, trial counsel was not deficient for failing to tender such an instruction.

# J. Trial Counsel Admitted that He Was Ineffective

[38] Coleman further argues that the post-conviction court erred in denying his petition because trial counsel admitted that he was ineffective due to his inexperience. However, our review of the evidence reveals that trial counsel is, to quote the post-conviction court, "well read and is a recognized scholar." App. at 343. The evidence further reveals that trial counsel agrees with the statement in an internet article that the "defense lawyer should candidly admit failure for the client's sake. It's the client's best chance." State's PCR Exhibit 1. In addition, as the State points out, trial counsel's testimony was "accompanied by his fervent expressions of belief that Coleman is actually innocent; bitter recriminations against the legal system that convicted Coleman; and an unwarranted belief in his own professional failure." Appellee's Br. at 40. Further, the record of proceedings reveals that trial counsel filed appropriate motions, cross-examined witnesses, made objections, responded to objections, and made cogent argument. Based on this evidence, the post-conviction court concluded that trial counsel's "assertions that he was deficient in his performance . . . lack[ed] credibility when weighed against the facts . . . in the record," and determined that Coleman "failed in his burden to prove ineffective assistance of counsel." App. at 343-44. Although the experience as a whole may be a good lesson to a new lawyer not to take cases he or she is not prepared to handle, Kindley recognized the limitations of his trial experience and engaged co-counsel. In hindsight, every lawyer makes mistakes during

trial. But again, a defendant is not entitled to a perfect trial, only a fair one. *See Inman*, 4 N.E.3d at 203. Therefore, it is only when counsel's mistakes render the outcome of the trial unfair that relief is appropriate, and we cannot say Coleman's trial was unfair. The evidence as a whole does not lead unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *See Hall*, 849 N.E.2d at 468.

## K. Cumulative Error

[39] Last, Coleman argues that the cumulative effect of counsel's errors deprived him of his right to the effective assistance of counsel. However, our supreme court has explained that "[t]rial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Kubsch v. State*, 934 N.E.2d 1138, 1154 (Ind. 2010) (citing *Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992)). We find no error, cumulative or otherwise, here.

# Conclusion

[40] For the foregoing reasons, the post-conviction court did not err in concluding Coleman had failed to prove he received the ineffective assistance of counsel and the judgment of the post-conviction court is affirmed.

[41] Affirmed.

Bailey, J., and Brown, J., concur.