## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 04 2018, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Blair Todd
Winamac, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Spohn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 4, 2018

Court of Appeals Case No.
18A-CR-1026

Appeal from the Starke Circuit Court

The Honorable Kim Hall, Judge

Trial Court Cause No.
75C01-1706-F5-17

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, David Spohn was convicted of domestic battery as a Level 6 felony. The trial court sentenced Spohn to the maximum sentence of two and one-half years in prison. On appeal, Spohn contends that the sentence is inappropriate in light of his character and the nature of the offense.

[2] We affirm.

## Facts & Procedural History

[3] Crystal and David Spohn married in 2006. They have two sons together – D.S. born in February 2007 and N.S. born in July 2014. M.K., Crystal's daughter born in February 2004, also lived with them.

[4] During the summer of 2015, Spohn was charged under three separate causes with Level 5 felony burglary and Level 6 felony theft. He entered into a plea agreement on April 7, 2016, in which he agreed to plead guilty to the felony theft charge in each case and the State dismissed the burglary charges. He was sentenced to three consecutive terms of thirty months executed and permitted to serve his sentences on work release. His subsequent request to modify his sentences to home detention was granted in December 2016, and he returned to live with Crystal and the children.

[5] Around this same time, Crystal became aware of an affair Spohn had while on work release and that the affair had resulted in a pregnancy. Spohn agreed with Crystal that he would only communicate with this woman regarding the pregnancy and that the romantic relationship was over. In the early morning

hours of May 30, 2017, however, Crystal discovered that the relationship had continued. She communicated with the other woman while Spohn slept and obtained a voicemail message from her as evidence of the ongoing affair.

[6] Crystal went to bed around 2:00 a.m. and climbed in between Spohn and two-year-old N.S. D.S. was sleeping in a toddler bed in the same room. When Spohn placed his arm around her, Crystal told him that she had talked with his girlfriend. She then played the voicemail message for him. Spohn responded by pushing Crystal off the bed, which also resulted in N.S. falling to the ground. Crystal tried to stand up, but Spohn pushed her onto D.S.'s bed. Crystal and Spohn then engaged in a verbal argument, while Spohn held her by the arm. When she threatened to call the police, Spohn took the phone and "whipped it across the room." *Transcript Vol. II* at 113.

[7] M.K. eventually awoke and came out of her bedroom. She stood in the doorway to their bedroom and yelled for Spohn to stop. Spohn stepped toward M.K. and called her "a little bitch." *Id.* Crystal stepped in between them and hit Spohn once on the side of the face. She then turned to leave with the three children. As she turned with N.S. in her arms, Spohn punched her in the back of the head. Crystal fell to the ground with N.S., and Spohn then began beating her with his fists about her back and ribs. The blows lasted for several minutes, as she stayed on top of N.S. to protect him. During the commotion, a friend staying the night at the home called 911.

[8] When Spohn stopped his attack, Crystal painfully pulled herself up off the ground and gathered the children. She could barely breathe due to the pain but managed to drive away with the children and her friend. The police arrived shortly after she left, and a responding officer spoke with Spohn, who had no visible injuries. The officer then met with Crystal a few miles down the road. She was visibly in pain and had injuries to her head and a significant portion of the left side of her torso. Crystal went to the hospital later that day and was diagnosed with a chipped L1 vertebra and bruised ribs. Her rib pain lasted several weeks, and the pain from the chipped vertebra has continued indefinitely. Additionally, the emotional trauma from the attack has continued to affect the children and Crystal.

[9] The State charged Spohn with domestic battery causing serious bodily injury, a Level 5 felony. Following a jury trial, Spohn was convicted of the lesser offense of domestic battery causing moderate bodily injury,[1] a Level 6 felony. On March 29, 2018, the trial court sentenced Spohn to the maximum sentence for his crime, two and one-half years in prison. Spohn now appeals his sentence as inappropriate. Additional information will be provided below as needed.

## Discussion & Decision

---

[1] Moderate bodily injury is defined as "any impairment of physical condition that includes substantial pain." Ind. Code § 35-31.5-2-204.5.

Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under

Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Further, Spohn bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[12] We agree with the State that nothing about this offense or Spohn's character suggests that the maximum, two-and-one-half-year sentence was inappropriate here. Spohn's offense was particularly egregious. He severely beat his wife in a prolonged attack that went well beyond that necessary to constitute the offense for which he was convicted. Moreover, Spohn's violent beating of his wife as she laid helpless on the ground took place in the immediate presence of their two young children and Crystal's teenage daughter. In fact, Crystal was holding their two-year-old son N.S. when Spohn struck her in the back of the head, causing her and N.S. to fall to the ground. Crystal protected N.S. with her body as the attack continued for several minutes. When the attack finally ended, Crystal frantically gathered the children and fled from the house around 3:00 in the morning, stopping to meet with police in a parking lot. Crystal suffered a chipped vertebra and injuries to her ribs and still had ongoing pain at the time of trial. Spohn's crime also caused significant emotional trauma for Crystal and the children. Further, Spohn took no responsibility for his actions and, instead, claimed that he acted in self-defense. Even on appeal, Spohn argues that his crime was "partially instigated by the victim in the case." *Appellant's Brief* at 11. The trial court expressly rejected this argument.

[13]     The nature of Spohn's offense and its effect on his family says much about his character, as does his significant history of delinquent and criminal behavior, which spans four different counties. Spohn was on electronic-monitored home detention – serving an aggregate seven-and-one-half-year sentence for three counts of Level 6 felony theft – when he committed this crime. Spohn's 2016 convictions for felony theft under three separate cause numbers were the result of a plea agreement, which permitted Spohn to avoid Level 5 felony burglary convictions in each case and allowed him to serve his sentence on work release. Spohn was then granted leniency by the court when his sentences were later modified to be served on home detention.[2] Less than six months after being placed on home detention, Spohn committed this crime against Crystal.

[14]     In sum, Spohn's argument that he is not the worst of the worst is unavailing. His vicious attack on his wife in the presence of their children resulted in long-term injury to Crystal and ongoing emotional damage to the children and is within the class of the most serious acts of domestic battery resulting in moderate bodily injury. Further, this crime took place while Spohn was serving a lengthy sentence on home detention for three other felony convictions. The maximum sentence of two and one-half years is not inappropriate under the circumstances presented.

---

[2] Spohn has received lenient treatment in other prior criminal cases, including pretrial diversion and non-reporting probation.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.